UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

**CARLOS D. HOPE,**

      Petitioner,

  v.                                                            Case No. 04-C-761

**GARY R. MCCAUGHTRY,**

      Respondent.

## DECISION AND ORDER DENYING PETITION FOR A WRIT OF HABEAS CORPUS

On August 11, 2004, Carlos D. Hope ("Hope"), a Wisconsin state prisoner proceeding pro se, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. United States District Chief Judge Rudolph T. Randa screened the petition pursuant to Rule 4, Rules Governing Section 2254 Cases, and ordered the respondent to answer the petition. The respondent filed an answer and subsequently, with leave of the court, the petitioner filed a response to the answer. Hope's petition is ready for resolution.

In his Rule 4 screening, Judge Randa construed Hope's petition as challenging the state court's finding that 1) his arrest was supported by probable cause, and 2) the photo array used for identification purposes was not impermissibly suggestive. Hope's petition was also construed as challenging the state court's rejection of his contentions that, 3) his original post-conviction counsel was ineffective for failure to present a post-conviction motion asserting ineffective assistance of trial counsel, 4) his trial counsel was ineffective for failure to present an alibi defense, and 5) his trial

counsel was ineffective for requesting that a cautionary instruction not be given relating to the other acts evidence. (Court's Order of Oct. 5, 2004, at 1-2.) On October 15, 2004, Judge Randa issued an Order reassigning this case to this court pursuant to consent of the parties to the exercise of full jurisdiction by a magistrate judge.

The court his jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the matter arises under federal statutes. Venue is proper under 28 U.S.C. § 1391. The case was assigned according to the random assignment of civil cases pursuant to 28 U.S.C. § 636(b)(1)(B) and General Local Rule 72.1 (E.D. Wis.). The parties have consented to United States magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c) and General L.R. 73.1 (E.D. Wis.).

## BACKGROUND

The facts of this case were set forth by the Wisconsin Court of Appeals in its decision.

> On November 10, 1997, an employee of the Wauwatosa Laundry and Dry Cleaners, Diane Roberson, was robbed at gunpoint. Two days later, on November 12, 1997, Christine Kleist, a sales clerk at the Vogue Cleaners, also located in Wauwatosa, was the victim of an attempted armed robbery. In both instances, two men walked into the store, loitered, asked several questions, and then one of the men pointed a gun at the sales clerk and asked for money. In the attempted robbery, the two men fled when the clerk was unable to open the cash register.
>
> On that same day, at yet another Wauwatosa business, Bartz's Display, which had been robbed just one month before, two employees observed two men acting suspiciously in the store, called the police and stated that they feared that they were going to be robbed. The employees described the men as black males with their hats pulled down covering their faces, making it difficult to view their facial features. The employees told the police that the suspicious men drove away in a grey car traveling eastbound on North Avenue. A short time later, the police stopped a grey car on North Avenue containing Hope and three other black men. Although Hope properly identified himself, two of the other three men gave false names. All four men denied having been in Bartz's Display store. When asked where they were coming from, the men were unable to satisfactorily account for their whereabouts. The Bartz's Display employees were brought to the scene, but they could not identify

> anyone. The police then arrested all four men for the Wauwatosa Cleaners armed robbery and the Vogue Cleaners attempted armed robbery.
>
> At the police station, the police took pictures of the four men. After adding a fifth picture to this group, the police showed the pictures to Roberson, Kleist and another employee of the Wauwatosa Cleaners who saw the robbers. All three identified Hope as the gunman. Hope was then charged with robbery with threat of force, party to a crime, as a habitual criminal. He filed a motion seeking to suppress his identification, claiming that the photo array was obtained from an "improper warrantless arrest not supported by probable cause and the photo array was overly suggestive." The motion was denied. A jury convicted Hope of the charged crime, and after the trial court found he was a habitual criminal, he was sentenced to thirty-five years in prison.

(Answer, Ex. E at 2-3.) Although Hope was arrested for both the robbery at Wauwatosa Cleaners and the attempted robbery at Vogue Cleaners, as is relevant to this case, he was charged with and subsequently convicted of only the robbery of Wauwatosa Cleaners. (Pet.'s Mem. at 1.) The court notes that the court of appeals' decision incorrectly states that the attempted robbery at Vogue Cleaners occurred on November 12, 1997, when it actually occurred on the same day as the Wauwatosa Cleaners robbery, November 10, 1997. (The court of appeals correctly stated that the incident at Bartz's Display occurred on November 12, 1997.) However, that error does not affect this court's analysis.

Milwaukee County Judge John J. DiMotto presided over Hope's jury trial. Hope was convicted on October 29, 1998, and Judge DiMotto sentenced him on January 5, 1999. (Answer, Ex. A.)

Hope appealed his judgment of conviction. (Answer, Ex. B.) On appeal, he argued that the trial court erred in denying his suppression motion because the police lacked probable cause to arrest him and, as a consequence, his photo taken after his arrest, by which the victim identified him as the robber, was the fruit of an illegal arrest. Id. Hope also argued that the trial court erred in denying

3

his suppression motion because the photo array shown to the witnesses was impermissibly suggestive. Id.

The Wisconsin Court of Appeals concluded that the police had probable cause to arrest Hope because, 1) the arresting officer had sufficient facts to believe that Hope had committed the crimes at the dry cleaning stores; 2) Diane Roberson's physical description of the robber established probable cause because it closely matched Hope's physical characteristics; 3) the arresting officer knew that the conduct of the robbers of the dry cleaning stores was similar to the behavior described by the Bartz's Display employees; and 4) while the descriptions of the car involved in the armed robbery and the car containing Hope were not identical, they were similar. (Answer, Ex. E.) The court of appeals also concluded that the photo array was not impermissibly suggestive. Id. Hope had argued that the photo array was impermissibly suggestive because his photo was unique as none of the other men depicted in the photos had an earring. However, the court of appeals found that the circumstances surrounding the photo array led to the conclusion that the identification was reliable. Id. The court also found that even if the photos were impermissibly suggestive, the identifications were reliable and trustworthy under the totality of the circumstances test because the witnesses relied principally on other features, and not the earring, in identifying Hope. Id. Hope filed a petition for review with the Wisconsin Supreme Court, which that court denied on May 8, 2001. (Answer, Ex. F.)

On April 22, 2002, Hope filed a postconviction motion pursuant to Wis. Stat. § 974.06(1) alleging that he was denied the effective assistance of trial counsel. The circuit court denied Hope's motion. On December 4, 2002, Hope appealed, arguing that his postconviction counsel was ineffective for failure to present a postconviction motion asserting ineffective assistance of trial

counsel, and that his trial counsel was ineffective for failing to present an alibi defense and for requesting a cautionary instruction not be given relating to other acts evidence. (Answer, Ex. G.) On January 14, 2004, the Wisconsin Court of Appeals affirmed and held that the circuit court properly denied Hope's postconviction motion. (Answer, Ex. J.) The court of appeals reasoned that, 1) the record supported the State's assertion that the issue raised in the appeal was known at the time of Hope's initial appeal and could have been raised then, and 2) to the extent that the issue presented was different, Hope had waived his right to its review by failing to raise it in his initial appeal or by failing to state sufficient reason for raising it at that time. (Answer, Ex. J at 2-3.) Hope filed a petition for review with the Wisconsin Supreme Court but his petition was denied on June 8, 2004. (Answer, Ex. K.)

## ANALYSIS

The habeas corpus statute was amended by the Antiterrorism and Effective Death Penalty Act (AEDPA), Pub.L. No. 104-132, 100 Stat. 1214 (1996) which provides in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). This provision entitles federal courts acting within their jurisdiction to interpret the law independently, but requires them to refrain from "fine tuning" state court

5

interpretations. Lindh v. Murphy, 96 F.3d 856, 870-77 (7th Cir. 1996), rev'd on other grounds, 521 U.S. 320 (1997). "Thus, although this court reviews the state court's legal conclusions and mixed questions of law and fact de novo, that review is 'tempered by AEDPA's deferential constraints.'" Hereford v. McCaughtry, 101 F. Supp. 2d 742, 746 (E.D. Wis. 2000) (quoting Sanchez v. Gilmore, 189 F.3d 619, 623 [7th Cir. 1999]).

A state court's decision is "contrary to . . . clearly established Federal law as established by the United States Supreme Court" if it is "substantially different from relevant [Supreme Court] precedent." Washington v. Smith, 219 F.3d 620, 628 (7th Cir. 2000) (quoting Williams v. Taylor, 120 S. Ct. 1495, 1519 [2000]). The court of appeals for this circuit recognized the narrow application of the "contrary to" clause:

> under the "contrary to" clause of § 2254(d)(1), [a court] could grant a writ of habeas corpus . . . where the state court applied a rule that contradicts the governing law as expounded in Supreme Court cases or where the state court confronts facts materially indistinguishable from a Supreme Court case and nevertheless arrives at a different result.

Washington, 219 F.3d at 628. The court went on to explain that the "unreasonable application of" clause was broader and "allows a federal habeas court to grant habeas relief whenever the state court 'unreasonably applied [a clearly established] principle to the facts of the prisoner's case.'" Id. (quoting Williams, 120 S. Ct. at 1523).

To be unreasonable, a state court ruling must be more than simply "erroneous" and perhaps more than "clearly erroneous." Hennon v. Cooper, 109 F.3d 330, 334 (7th Cir. 1997). Under the "unreasonableness" standard, a state court's decision will stand "if it is one of several equally plausible outcomes." Hall v. Washington, 106 F.3d 742, 748-49 (7th Cir. 1997). In Morgan v. Krenke, the court explained that:

6

> [u]nreasonableness is judged by an objective standard and under the "unreasonable application" clause, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable."

232 F.3d 562, 565-66 (7th Cir. 2000) (quoting Williams, 120 S. Ct. at 1522). Therefore, before a court may issue a writ of habeas corpus, it must determine that the state court decision was both incorrect and unreasonable. Washington v. Smith, 219 F.3d at 628.

### A. Whether Petitioner's Arrest was Supported by Probable Cause

The petitioner contends that the court of appeals erred in upholding the decision that his arrest was supported by probable cause. Although the petitioner "has no quarrel" with the principles of law set forth by the court of appeals, he argues that the court of appeals misstated or ignored crucial facts in applying those principles. (Pet.'s Mem. at 10.) Specifically, Hope asserts that the court of appeals improperly ignored the existence of descriptions of the suspect that were inconsistent with Hope. He also asserts that the court of appeals failed to recognize that the descriptions of the car were not similar. Id. at 10-12.

The respondent contends that the issue of whether the police had probable cause to arrest Hope is a Fourth Amendment question not cognizable in habeas corpus pursuant to Stone v. Powell, 428 U.S. 465 (1976). Alternatively, the respondent denies that police lacked probable cause to arrest Hope.

The Wisconsin Court of Appeals decided:

> "[P]robable cause exists where the totality of the circumstances within the arresting officer's knowledge at the time of the arrest would lead a reasonable police officer to believe that the defendant probably committed a crime." *State v. Koch*, 175 Wis. 2d 684, 701, 499 N.W.2d 152 (1993). Probable cause to arrest includes both probable cause to believe that a crime has been or is being committed and probable

7

cause to believe that a specific individual is a criminal actor. *State v. Wilson*, 229 Wis. 2d 256, 267-68, 600 N.W.2d 14 (Ct. App. 1999). The information must reasonably lead the officer to believe that "guilt is more than a possibility." *Id.*

Here, the arresting officer had sufficient facts to believe that Hope had committed the crimes at the dry cleaning stores. First, Hope's close proximity, in both time and vicinity, to the armed robbery location was a significant factor. The Wauwatosa Cleaners armed robbery took place two days earlier in the same vicinity where Hope was arrested. In fact, as noted in the State's brief, Bartz's Display is only two blocks away from the Wauwatosa Cleaners store. Inasmuch as a police officer first spotted the car in which Hope was a passenger two blocks away from Bartz's Display, it was reasonable to surmise that Hope was in a car within four blocks of the robbery location, two days after the robbery. Further, the police were aware that more than one robbery had occurred in the same general location over the span of two days, increasing the possibility that another robbery would occur nearby.

Second, and more importantly, Roberson's physical description of the robber established probable cause because it closely matched Hope's physical characteristics. Contrary to Hope's contention that Roberson's description was general, Roberson gave the police a detailed description. In his brief, Hope summarized Roberson's description of the gunman given to the police:

> "[T]he gunman [w]as a black male, plus or minus 23 years of age, 6 foot 3 inches tall, 180 pounds, medium build, dark complexion, unshaven, wearing a three-quarter length down coat, a black knit skull cap and a large diamond pierced earring in his left ear."

According to police records, Hope is black, six feet one inches tall, 180 pounds, and, at the time of his arrest, was 23 years old. Hope's photo, taken when he was arrested in this case, further supports the victim's description as Hope is depicted as being dark complected and unshaven. Also, Hope had a large diamond pierced earring in his left ear. Thus, Roberson's description correctly estimated Hope's actual age and weight, his complexion, the fact that he was unshaven and had an earring, and her approximation of his height was within two inches.

Third, the arresting officer knew that the conduct of the robbers of the dry cleaning stores was similar to the behavior observed by the Bartz's Display employees. At the time of the stop, the police could reasonable suspect that two of the occupants of the stopped car were in the Bartz's Display store. Although no Bartz's Display employees could identify the suspicious man, a car with occupants matching their description was spied only two blocks away from the store. Thus, a reasonable officer could suspect that two of the men in the car had been in the store. Consequently, the police could consider the similarity between the behavior of the

8

two men observed at Bartz's Display and that of the two armed robbers at the Vogue Cleaners and Wauwatosa Cleaners robberies. The victims in the robberies reported that the armed robbers lingered in the store until they approached the sales clerks, asked several questions, and then displayed a gun. The Bartz's Display employees stated that the two suspicious men also meandered through the store for a period of time without actually looking at any merchandise. Further, one of the men had his hand in his pocket the entire time, suggesting he was armed. Police suspicions were further heightened when two of the passengers gave false names and could not account for their recent whereabouts.

Finally, while the descriptions of the car involved in the armed robbery and the car containing Hope were not identical, they were similar. At the time of the Wauwatosa Cleaners robbery, one of the owners of the cleaners saw a car containing at least three black people drive slowly through the alley, stop, and then back up and drive off. Minutes later, the owner saw the same car in the main parking lot of the store at about the same time as the armed robbery. The owner testified that the car was a four-door sedan, grey in color, with shiny trim around the windows and with a pronounced grill. When Hope was arrested, he was a passenger in a grey four-door sedan.

Thus, under the totality of the circumstances, we conclude, as did the trial court, that a reasonable officer could have believed Hope was involved in the Vogue Cleaners and Wauwatosa Dry Cleaners robberies. The arresting detective knew Hope was near the crime scene just two days later and knew that robberies were occurring in that area. He also knew that Hope's physical description was almost identical to the description given by one of the victims. Two additional factors supported the officer's probable cause determination: (1) the evasive behavior of Hope's fellow passengers; and (2) the fact that the car Hope was traveling in matched the description of a car carrying two men who were acting suspiciously in Bartz's Display and was also similar to the car thought to be involved in the armed robbery. Consequently, the police had probable cause to arrest Hope for the armed robbery of the Wauwatosa cleaners and the photo was not tainted by an illegal arrest.

(Answer, Ex. E at 4-7.)

As indicated, the respondent contends that Hope's Fourth Amendment claim is barred by Stone v. Powell, 428 U.S. 465 (1976). In that case, the United States Supreme Court held that where the state has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an

9

unconstitutional search or seizure was introduced at his trial. Stone, 428 U.S. at 494; see also Hampton v. Wyant, 296 F.3d 560, 562-65 (7th Cir. 2002). This is because "a person imprisoned following a trial that relies, in part, on unlawfully seized evidence is not 'in custody in violation of the Constitution or laws or treaties of the United States.'" Hampton, 296 F.3d at 562 (quoting 28 U.S.C. § 2254(a)). The Seventh Circuit in Hampton noted that the "*seizure* may have violated the Constitution, but the *custody* does not, because the exclusionary rule is a social device for deterring official wrongdoing, not a personal right of defendants." Id. at 562-63 (emphasis in original).

An accused receives a full and fair opportunity to litigate if (1) he or she has clearly informed the state court of the factual basis for that claim and has argued that those facts constitute a violation of his or her Fourth Amendment rights and (2) the state court has carefully and thoroughly analyzed the facts and (3) applied the proper constitutional case law to the facts. Hampton, 296 F.3d at 563 (citing Pierson v. O'Leary, 959 F.2d 1385, 1391 [7th Cir. 1992]). An opportunity for full and fair litigation of a Fourth Amendment claim guarantees the right to present one's case, but it does not guarantee a correct result. Cabrera v. Hinsley, 324 F.3d 527, 532 (7th Cir. 2003). Here, Hope was provided an opportunity for full and fair litigation of his Fourth Amendment claim. The trial court held a pretrial hearing on March 23, 1998, on a motion to suppress the identification photo taken after his arrest based on unconstitutional seizure. (Answer, Ex. L.) Also, in his brief in support of his direct appeal, Hope informed the Wisconsin Court of Appeals of the factual basis of his Fourth Amendment claim and argued that those facts constituted a violation of his Fourth Amendment rights. Additionally, the Wisconsin Court of Appeals carefully and thoroughly analyzed the facts of Hope's Fourth Amendment claim and applied the proper constitutional law to the facts. See Holmes v. Vill. of Hoffman Estates, 511 F.3d 673, 679-80 (7th Cir. 2007). Thus, because Hope

10

received the opportunity to fully and fairly litigate his Fourth Amendment claim, Stone v. Powell precludes this court from considering his Fourth Amendment claim. See Stone, 428 U.S. at 494.

### B. Whether Photo Array for Identification was Impermissibly Suggestive

The petitioner contends that the court of appeals erred in upholding the decision that the photo array was not impermissibly suggestive. According to Hope:

> The Court of Appeals also stated "All testified that the earring was not the sole or even the first reason for their selection of Mr. Hope's photo." Ct.App.Op.10,Apx.100 (¶ 20).
>
> This statement is not correct! Christine Kliest and Diane Roberson, the two witnesses who directly faced the robber, each stated: The first thing that attracted her to Mr. Hope's photo was the Diamond Earring in his ear. 30:36,54.
>
> Each of the witnesses noted at least one other future [sic] in Mr. Hope's photo, such as the nose, "slanted" eyes or "deep" eyes. 30:10,36,54. However, the earring is the "ONLY" feature noted by all three witnesses as a feature which prompted the selection of Mr. Hope's photo.

(Pet.'s Mem. at 12-13.)

The respondent denies that the Wisconsin Court of Appeals erred in finding that the photo array was not impermissibly suggestive. The respondent contends that the state appellate court's decision upholding the constitutionality of the photo array was neither contrary to, nor an unreasonable application of, clearly established Supreme Court precedent.

The Wisconsin Court of Appeals stated:

> Citing *State v. Haynes*, 118 Wis. 2d 21, 30, 345 N.W.2d 892 (Ct. App. 1984), Hope argues that the photo array was impermissibly suggestive. Hope contends that the photo array was improper because his photo was unique as none of the other men depicted in the photos had an earring. We disagree.
>
> "A photographic procedure which includes a photo which is unique in a manner directly related to an important identification factor may be held impermissible suggestive." *Haynes*, 118 Wis. 2d at 30; *see also Powell v. State*, 86

11

Wis. 2d 51, 67, 271 N.W.2d 610 (1978); *Schaffer v. State*, 75 Wis. 2d 673, 680-81, 250 N.W.2d 326 (1977); *Fells v. State*, 65 Wis. 2d 525, 537, 223 N.W.2d 507 (1974); *United States v. Sanders*, 479 F.2d 1193, 1197 (1973). However, after reviewing the record, we are satisfied that the facts in this case more closely resemble those in *Mosley*, and, like the court in *Mosley*, we determine that the photo array was not impermissibly suggestive.

In *Mosley*, the photos shown to the armed robbery victims included only one man sporting a tattoo. *Mosley*, 102 Wis. 2d at 653. The victims had previously described the robber as having a tattoo on his arm. While our supreme court explained that it was not approving the suggestive identification method used, it found that the "procedure produced a sufficiently reliable identification." *Id.* at 655. In the instant case, we also do not approve of the identification method, which could easily have been corrected by requiring Hope to remove his earring, but we are satisfied that the identification was sufficiently reliable.

Although the circumstances surrounding the photo array here differ from those relied upon in *Mosley*, we conclude the circumstances here also lead to the conclusion that the identification was reliable. Like the tattoos in the photo in *Mosley*, the earring in Hope's photo is "rather difficult to make out." Further, the photos of some of the other men's ears are not well defined, leaving doubt about whether any others also were wearing an earring or earrings. All of the photos were "headshots," with the facial features of the "suspects' displayed prominently. Identification of Hope's facial features was the key to the victims' claim that Hope was the gunman. Thus, while the photos were arguably suggestive, they were not impermissibly so.

Moreover, were we to determine that the photos were impermissibly suggestive, we would, nevertheless, find the identifications here reliable and trustworthy under the totality of the circumstances test. All the witnesses unhesitantly identified Hope as the gunman. Further, all testified that the earring was not the sole or even the first reason for their selection of Hope's photo. Although all three witnesses told the police that the robber was wearing an earring, and they all testified that they noticed the earring in the picture, they also asserted that they identified Hope on the basis of other characteristics, and that the earring was not a significant factor in their identifying Hope as the gunman. One witness stated she based her identification of Hope on his facial features. Roberson said she noticed the shape of Hope's eyes. Kleist testified that she "does portraits," and she recognized Hope's nose, lips and eyes. Thus, because the witnesses relied principally on other features, and not the earring, in identifying Hope, under the totality of the circumstances test, we are satisfied that the identification of Hope was reliable.

(Answer, Ex. E. at 7-10.)

A petitioner asserting that an identification procedure was unconstitutional must initially show that the procedure was unduly suggestive. Neil v. Biggers, 409 U.S. 188, 198 (1972); Gregory-Bey v. Hanks, 332 F.3d 1036, 1045 (7th Cir. 2003). If that burden is met, "the court must then determine, under the 'totality of the circumstances,' whether the identification was sufficiently reliable to prevent misidentification," Gregory-Bey, 332 F.3d at 1045, keeping in mind "the corrupting effect of the suggestive identification itself," Manson v. Brathwaite, 432 U.S. 98, 114 (1977). Reliability is based on factors including "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation." Manson, 432 U.S. at 114; see Biggers, 409 U.S. at 199-200.

In this case the Wisconsin appellate court concluded that the photo array was not impermissibly suggestive. The state court also concluded that even if the photo array was unduly suggestive, the resulting identification was nonetheless reliable under the Biggers factors. According to the court of appeals, the witnesses "unhesitantly identified Hope as the gunman." The state court also reasoned that while the fact that Hope was wearing an earring in the photo was one basis upon which the witnesses identified him, other characteristics of his face played a more prominent role in the identification.

Hope does not point to any federal precedent that undermines the court of appeals' conclusion. It is not the role of this court to sit in direct review of Hope's convictions, and thus the court will not independently reassess the reliability of the witness's identification. See McFowler v. Jaimer, 349 F.3d 436, 455 (7th Cir. 2003). It is enough to note that, on this record, the court cannot conclude that the Wisconsin court's finding that the photo array was not impermissibly

13

suggestive and subsequent weighing of the Biggers factors was an unreasonable application of federal law.

### C. Ineffective Assistance of Counsel

To prevail on an ineffective assistance of counsel claim, a petitioner must demonstrate that the Wisconsin court's decision was either contrary to, or based on an unreasonable application of, federal law. Williams v. Davis, 301 F.3d 625, 631 (7th Cir. 2002) (applying § 2254(d)(1) standards). The applicable federal law governing ineffective assistance claims is set forth in Strickland v. Washington, 466 U.S. 668 (1984). Strickland requires the petitioner to show: (1) his attorney's performance fell below an objective standard of reasonableness; and (2) the deficient performance caused him prejudice. 466 U.S. at 687-88 (1984); Roche v. Davis, 291 F.3d 473, 481-82 (7th Cir.2002); Montenegro v. United States, 248 F.3d 585, 590 (7th Cir. 2001). Courts review counsel's performance under the first prong deferentially, presuming reasonable judgment unless the factual record rebuts such a presumption. See Strickland, 466 U.S. at 689; Matheney v. Anderson, 253 F.3d 1025, 1039 (7th Cir.2001).

With regard to the prejudice element, the petitioner must show that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. See Strickland, 466 U.S. at 689; Matheney, 253 F.3d at 1039-40. If the court finds that the counsel's alleged deficiency did not prejudice the defendant under the second prong, the court need not consider the first prong of the Strickland test. Berkey v. United States, 318 F.3d 768, 772 (7th Cir. 2003).

Hope argues that his appellate counsel was ineffective for failing to allege that his trial counsel was ineffective. Specifically, Hope alleges that his trial counsel was ineffective for failing

14

to pursue an alibi defense and for waiving a cautionary jury instruction regarding other acts evidence. Hope is able to demonstrate that he was prejudiced by his appellate counsel's allegedly ineffective performance only if his trial counsel was ineffective and thus, the viability of his ineffective assistance of appellate counsel claim depends upon his ineffective assistance of trial counsel claim. Therefore, the appropriate starting point is the question of whether his trial counsel was ineffective.

The court of appeals summarily affirmed the trial court's denial of his claim that his appellate counsel was ineffective, and held that Hope was procedurally barred by the rule set forth in State v. Escalona-Naranjo, 185 Wis. 2d 168, 181-82, 517 N.W.2d 157 (1994). (Answer, Ex. J at 2-3.) Under the Escalona-Naranjo rule, a defendant is barred from raising an issue for the first time by way of a collateral attack on his conviction pursuant to Wis. Stat. § 974.06 if the issue could have been raised in his direct appeal under § 974.02. A Wisconsin court's holding that a petitioner's claim is barred by the procedural rule set forth in Escalona-Naranjo constitutes an adequate independent state ground for the decision, see Perry v. McCaughtry, 308 F.3d 682, 692 (7th Cir. 2002), and therefore, ordinarily, when the state court relies upon the Escalona-Naranjo rule, the petitioner's federal habeas petition must fail.

Before the circuit court regarding his § 974.06 motion, Hope raised only the issue of ineffective assistance of trial counsel; the issue of ineffective assistance of appellate counsel was raised for the first time on appeal. The court of appeals did not consider Hope's argument that he was denied the effective assistance of appellate counsel. Rather, it simply held that the Escalona-Naranjo procedural bar precluded review of Hope's underlying claims. The court of appeals never explicitly held that by failing to raise the issue before the circuit court, Hope had waived or otherwise procedurally defaulted his argument that he is able to demonstrate sufficient reason so as to avoid

15

the Escalona-Naranjo rule because his appellate counsel was ineffective. Therefore, this court shall turn to the merits of Hope's claims.

Hope alleges that his trial counsel was ineffective for failing to call Hope's girlfriend as an alibi witness. The crux of Hope's defense was that he was misidentified as the robber. Thus, he argues, an alibi defense would have corroborated his misidentification defense. (Answer Ex. G at 9.) Trial counsel was aware of the availability of an alibi defense; Hope's trial attorney represented Hope at a parole revocation hearing where Hope's girlfriend testified and a notice of alibi was filed. However, during that parole revocation hearing, the administrative law judge ("ALJ") explicitly stated that he found that Hope's girlfriend was not credible. (Answer, Ex. H at 8.) Specifically, Hope's girlfriend testified that she knew Hope could not have committed the robbery because it was Hope's routine to be home in the morning. (Id.) However, the ALJ noted that on numerous occasions, Hope's parole agent stopped by the house in the morning and found that he was not at home. (Id.)

Given that Hope's trial counsel was well-aware of these clear credibility problems and the apparent weakness in the veracity of Hope's alibi defense, the court is unable to conclude that it was unreasonable for Hope's attorney to decide not to call Hope's girlfriend or to otherwise present an alibi defense. Presenting an ineffective alibi defense, particularly when it is supported only by persons with apparent credibility problems, may often be counterproductive to a defendant. In light of the apparently poor reception that Hope's girlfriend's testimony received from the ALJ, it was not unreasonable for Hope's trial attorney to attempt to capitalize upon what he learned from the earlier hearing and to shift or refocus his strategy before the jury. Thus, Hope is unable to demonstrate the first prong of the Strickland test.

16

Second, Hope alleges that his trial counsel was ineffective for not requesting a limiting instruction regarding other acts evidence that was admitted in the trial. The jury was presented evidence that shortly before the charged robbery Hope participated in another similar uncharged attempted armed robbery a few blocks away from where the charged robbery occurred. This evidence was received over defense objection because it tended to show the identity of the actor in the charged offense. Specifically, by way of a photographic lineup, the victim of the uncharged armed robbery identified Hope as the gunman.

Hope's trial counsel outlined on the record during the jury instruction conference his rationale for not requesting the cautionary instruction. (Answer, Ex. Q at 112-14.) Hope's counsel was concerned that an explicit cautionary instruction would have unnecessarily highlighted the evidence. He explained that in light of the testimony presented regarding this other act, it was sufficiently clear to the jury that there was no other charged crime in that incident, and that these facts were admitted solely for the purpose of identification. Because the case was about identification, the jury was either going to believe the testimony regarding identification or disbelieve it. The defense was not arguing that these two similar acts were not committed by the same person; rather, the defendant was simply arguing that both of these acts were committed by someone other than him.

In light of Hope's attorney's stated rationale for declining to request the jury instruction, the court finds that this decision was a reasonable decision of trial strategy, and thus Hope is unable to demonstrate the first prong of the Strickland test.

Therefore, the court finds that Hope has failed to demonstrate that his trial counsel was ineffective and thus, Hope's claim that his appellate counsel was ineffective for failing to allege that

17

his trial counsel was ineffective, must also fail. Because Hope's trial counsel was not ineffective, it was not unreasonable nor prejudicial for Hope's appellate counsel to decline to raise these issues on appeal.

**ORDER**

**NOW, THEREFORE, IT IS ORDERED** that the petitioner's petition for writ of habeas corpus be and hereby is **denied**. The Clerk shall enter judgement accordingly.

Dated at Milwaukee, Wisconsin this 31st day of March, 2008.

BY THE COURT:

/s/ Aaron E. Goodstein
AARON E. GOODSTEIN
United States Magistrate Judge